UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Kristi L. Wells, f/k/a Kristi L. Stimpfl,

                        Plaintiff,

    vs.

Susan Schnick, individually and as
Guardian ad Litem of Minor Children
H.G.S., E.V.S., and S.M.S.; Traci Seelye,
Guardian ad Litem Program Manager
for the Ninth District; Mark Toogood,
Guardian ad Litem Program Manager
for the State of Minnesota; Carol J.
Shegrud, individually and as Custody
Evaluator; Nan Matthews, Ph.D., L.P.;
Allison Meisner, M.D.; City of Baudette;
Robert Utech, City of Baudette Police
Chief; County of Lake of the Woods;
Dallas D. Block, Sheriff of Lake of the
Woods County; Daryl Fish, Lake of the
Woods Sheriff's Department; John
Does 1-10; and XYZ Corporations 1-10,

                      Defendants.        Civ. No. 08-144 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendants City of Baudette (the "City"), and Police Chief Robert Utech ("Utech")(collectively, the "City Defendants"), to Dismiss, and upon the Motion of the Defendants Susan Schnick ("Schnick"), Traci Seelye ("Seelye"), and Mark Toogood ("Toogood")(collectively, the "State Defendants"), to Dismiss.  For these purposes, the Plaintiff appears by Richard I. Diamond, Esq.; the City Defendants appear by Jason J. Kuboushek, Esq.; and the State Defendants appear by John S. Garry, Assistant Attorney General for the State of Minnesota.[1]

For reasons which follow, we recommend that the City Defendants' Motion to Dismiss be granted, as to all of the Plaintiff's claims against them, and we further

---

[1]On February 26, 2008, the Defendants Lake of the Woods County, Dallas D. Block, and Daryl Fish (collectively, the "County Defendants"), filed an Answer to the Plaintiff's Complaint. See, Docket No. 3.  However, no appearance was made by, or on behalf of ,those Defendants, at the Hearing.  In addition, at the time of the Hearing, the Defendants Carol J. Shegrud, Nan Matthews, Ph.D., L.P., and Allison Meisner, M.D. (collectively, the "Medical Defendants"), had not yet been served. See, Docket Nos. 40, 41, 44.  Accordingly, no appearance was made by, or on behalf of, those Defendants, at the Hearing.

recommend that the State Defendants' Motion to Dismiss be granted, as to all of the Plaintiffs' claims against them.

## II. Factual and Procedural History

In her Complaint, the Plaintiff alleges that the Defendants violated her Federal civil rights, and committed several torts under State law, during the course of her divorce proceedings, in 2003 and 2004, and the related child custody proceedings. See, Complaint, Docket No. 1.   According to the Complaint, the Plaintiff's ex-husband commenced dissolution proceedings on August 5, 2003, in Lake of the Woods County District Court. Id. at ¶3.1.  Thereafter, Schnick was appointed by the Court to serve as the Guardian ad litem ("GAL") for the couple's three minor daughters, in April of 2004.[2]  Id. at ¶3.2.  The Plaintiff alleges that Schnick acted "maliciously and intentionally beyond the scope of [her] assignments in [her] reports to the court," in part by informing the Court "that she was gravely concerned about plaintiff's mental health status, without giving any supporting evidence." Id. at ¶4.1. The Plaintiff contends that Schnick is not a professional psychologist, but that, nonetheless, she advised the Court of her belief that the Plaintiff was mentally ill, and

---

[2]According to the Complaint, Seelye is the GAL Program Manager in the Ninth Judicial District, while Toogood is the State GAL Program Manager. See, Complaint, supra at ¶1.2.

that the Plaintiff "needed to prove her worthiness of being able to be a fit mother to her own children." Id. at ¶¶4.1-4.2.

Under the heading of "Racial Discrimination," the Plaintiff alleges that she filed two (2) official complaints with Seelye, and Toogood, although she does not describe the substance, or the subject matter, of her complaints. Id. at ¶6.2. The Plaintiff further alleges that her father is an enrolled member of the Red Lake Band of Chippewa Indians, id. at ¶1.1, and that the Defendants knew of her Native American heritage, based upon the information she had submitted to the GAL's Parent Plan.[3] Id. at ¶6.1. The Plaintiff contends that her complaints to Seelye, and Toogood, were disregarded, and that Seelye told her that "Guardians ad Litem do not need to show awareness or sensitivity to Native Americans." Id. at ¶6.2. The Plaintiff further alleges that "[i]t is a well known and understood condition of life in Northern Minnesota that there is rampant discrimination against Native Americans." Id. at ¶6.3.

In another section of her Complaint, the Plaintiff alleges that, on November 12, 2004, following a Court Hearing, her ex-husband was granted custody of their three daughters. Id. at ¶7.1. According to the Plaintiff, Schnick told the Plaintiff's oldest

---

[3]It is not clear if the Plaintiff imputes this knowledge to all of the Defendants, or only to some.

daughter "that plaintiff was mentally ill and that plaintiff needed help from doctors before she could see them." Id.  The Plaintiff alleges that Schnick then insisted that the children leave the Courthouse with their father, after "shaking hands and celebrating the change of custody with the ex-husband's attorney in the parking lot." Id. at ¶7.2.  The Plaintiff alleges that, during the custody transfer, two (2) City police officers used excessive force to physically restrain her oldest daughter, while "pry[ing] her away from her mother," and escorting her to her father's car. Id. at ¶7.2-7.3.  The Plaintiff contends that her daughter began hyperventilating, and suffered red marks on her arms, as well as emotional distress, as a result of the police officers' conduct. Id.

Lastly, the Plaintiff alleges that she was deprived of her physical custody of her daughters, and subjected to six (6) months of supervised visitation, after the "defendants provid[ed] sufficient testimony against plaintiff to permit the Court to allow plaintiff's ex-husband to move to Georgia with the three minor children, thereby effectively depriving plaintiff of all visitation." Id. at ¶7.6.  The Plaintiff does not specify which of the Defendants are accused of providing that testimony, nor does she detail what testimony was provided.

Accordingly, the Plaintiff asserts constitutional claims, under the Fourth, Fifth, and Fourteenth Amendments, as well as under Title 42 U.S.C. §§1981(a), 1983, 1985, and 1988, in addition to State law claims under the Minnesota Human Rights Act ("MHRA"), Minnesota Statutes Sections 363A.01 et seq., and for defamation, defamation per se, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). As noted, she does not specifically identify which of the Defendants are allegedly liable for which claims -- instead, each claim is asserted against the "Defendants," collectively. Further, she seeks punitive damages, costs, and attorney's fees. See, Complaint, supra at pp. 10-19. In addition, the Plaintiff asserts, in her Complaint, that she "does not seek to relitigate the custody issue, but merely to recover damages for the invasion of her rights." Id. at p. 2.

### III. Discussion

The City Defendants now seek the dismissal of the Plaintiff's claims against them. See, City Defendants' Motion to Dismiss, Docket No. 5; City Defendants' Memorandum in Support, Docket No. 7. The State Defendants have also filed a Motion to Dismiss the Plaintiff's claims against them. See, State Defendants' Motion to Dismiss, Docket No. 10; State Defendants' Memorandum in Support, Docket No.

12.  The Plaintiff opposes both Motions on their merits.  See, <u>Plaintiff's Memorandum in Opposition</u>, <u>Docket No. 24</u>.  We address the parties' arguments in turn.

    A.    <u>Standard of Review</u>.  "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." <u>Riley v. St. Louis County</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.3d 554, 556 (8th Cir. 1998); see also, <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004).  In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party.  See, <u>Maki v. Allete, Inc.</u>, supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." <u>Young v. City of St. Charles</u>, 244 F.3d 623, 627 (8th Cir. 2001), citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998), cert. denied, 525 U.S. 921 (1998); see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

    "Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants

- 7 -

the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998); see also, Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, 1964-65 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069

(8th Cir. 2004); <u>Stahl v. United States Dep't of Agriculture</u>, 327 F.3d 697, 700 (8th Cir. 2003).  Although the Plaintiff submitted numerous materials, in opposition to the Defendants' Motions, because our decision rests entirely upon the pleadings, we analyze the Defendants' Motions under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.

> B.     <u>The City Defendants' Motion to Dismiss</u>.

At the Hearing, counsel for the Plaintiff conceded that he had improperly drafted the Complaint, so as to plead all claims generally against the "Defendants," rather than clarifying **which** claims were being asserted against **which** Defendants. See, <u>Liggins v. Morris</u>, 749 F. Supp. 967, 970-71 (D. Minn. 1990)("Although the claims are divided into separate counts, all possible constitutional violations and all common law claims are asserted on behalf of all plaintiffs against all named defendants," however, "[c]onstitutional claims brought under 42 U.S.C. §1983 are discrete claims and as such should not be pled in this shotgun manner."). Accordingly, counsel for the Plaintiff clarified that only two (2) claims were directed at the City Defendants:  1) a constitutional claim for excessive force,[4] which relates

---

[4]Notably, the Plaintiff did **not** assert a claim for excessive force, although she claims that the City police officers used "unnecessary and excessive" force to escort
(continued...)

to the manner in which the City police officers escorted the Plaintiff's daughter to the car; and 2) a State law claim for NIED.  As a result of that clarification, we limit our discussion of those claims insofar as they relate to the City Defendants.

       1.     <u>The Plaintiff's Claim for Excessive Force</u>.

       a.     <u>Standard of Review</u>.  An excessive force claim is analyzed under the framework applicable to Fourth Amendment seizures.  See, <u>McVay ex rel. Estate of McVay v. Sisters of Mercy Health System,</u> 399 F.3d 904, 908 (8th Cir. 2005)("A seizure for Fourth Amendment purposes occurs when a government actor 'by means of physical force or show of authority * * * in some way restrain[s] the liberty of a citizen.'"), citing <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989).  The test employed in determining if the force  was excessive considers "whether the amount of force used was objectively reasonable under the particular circumstances." <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001), quoting <u>Greiner v. City of Champlin</u>, 27 F.3d 1346, 1354 (8th Cir. 1994).

---

     [4](...continued)
her daughter from the courthouse.  See, <u>Complaint</u>, supra at ¶7.3.  Instead, the claim was identified by the City Defendants, in their supporting papers.  See, <u>City Defendants' Memorandum in Support</u>, <u>Docket No. 7</u>, at 15.

The factors, which must be considered in the excessiveness determination, include "the severity of the suspected crime, whether the suspect posed an immediate threat to the officer or others, and whether the suspect was actively resisting arrest." Goff v. Bise, 173 F.3d 1068, 1073 (8th Cir. 1999). Of course, "this generalized right to be free from an unreasonable use of excessive force during a police seizure does not clearly establish a right for purposes of a qualified immunity analysis." Winters v. Adams, supra at 1202-03. Rather, a plaintiff "must show the right was clearly established in a particularized sense relevant to the case at hand." Id. at 1203.

b.    Legal Analysis. At the Hearing, counsel for the Plaintiff acknowledged that the Plaintiff's excessive force claim relates only to the police officers' conduct in escorting her daughter to the car. Accordingly, the Plaintiff does not assert an excessive force claim on her own behalf, and her daughter is not named as a party in this action. Therefore, it is questionable that the Plaintiff would have standing to allege any type of damages on behalf of her daughter, absent different allegations in her Complaint. "The requisite elements of Article III standing are well established: A plaintiff must allege a personal injury fairly traceable to the defendant[s]' allegedly unlawful conduct and likely to be redressed by the requested relief." Patel v. United States Bureau of Prisons, 515 F.3d 807, 816 (8th Cir. 2008),

quoting <u>Hein v. Freedom From Religion Found., Inc.</u>, 551 U.S. ---, 127 S.Ct. 2553, 2562 (2007)(internal quotation omitted); see also, <u>Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc.</u>, 509 F.3d 406, 419 (8th Cir. 2007)(same).

However, even if the Plaintiff could assert a claim on behalf of her daughter, she has not adequately stated any such claim for excessive force.  In her Complaint, the Plaintiff asserts that the officers' conduct caused her daughter to hyperventilate, and produced red marks on her arms.  See, <u>Complaint</u>, supra at ¶7.3.  Such <u>de minimis</u> injuries are not sufficient to state a claim for excessive force.

Under the governing law, police officers are often cloaked with qualified immunity -- as well as official immunity under Minnesota law -- for their actions, where <u>de minimus</u> injuries result from physical contact with law enforcement officials who are acting in the course and scope of their duties.  See, <u>Wertish v. Krueger</u>, 433 F.3d 1062, 1067 (8th Cir. 2006) ("[B]ecause some force was reasonably required to arrest and handcuff [the plaintiff], his relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were de minimis injuries that support the conclusion that [the arresting officer] did not use excessive force."), citing <u>Andrews v. Fuoss</u>, 417 F.3d 813, 818 (8th Cir. 2005)("[The plaintiff]

- 12 -

alleges at most very minor injuries, likely nothing more than the temporary and slight aggravation of pre-existing conditions," and "[t]hese are precisely the type of de minimis injuries that preclude a claim for excessive force."); Oliver v. City of Minneapolis, 2005 WL 2406035 at *6 (D. Minn., September 27, 2005)("[E]ven if the Court were to find fault with the officers' conduct, Plaintiff only sustained, at most minimal injury as a result of the force," and "[a] plaintiff's de minimis injury 'is insufficient to support a finding of a constitutional violation.'"), quoting Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003); Hasher v. City of Rochester, 2005 WL 1925856 at *4 (D. Minn., August 11, 2005)("[I]n absence of more than minimal injury, Plaintiff's claim that Defendants utilized excessive force during his arrest fails.").

Therefore, we conclude that the Plaintiff has failed to state a cognizable claim for excessive force, against the City Defendants, and we recommend that their Motion to Dismiss be granted, in this respect.

2.    The Plaintiff's Claim for NIED.  To establish a claim for NIED, a plaintiff must establish that the defendant had a duty of care that was breached, which resulted in an injury, and the plaintiff must additionally show "that she (1) was within a zone of danger of physical impact; (2) reasonably feared for her own safety;

- 13 -

and (3) suffered severe emotional distress with attendant physical manifestations."[5]

Stead-Bowers v. Langley, 636 N.W.2d 334, 343 (Minn. App. 2001); see also, Engler

v. Illinois Farmers Insurance Co., 706 N.W.2d 764, 767 (Minn. 2005).  However, "a

remote danger of personal peril is insufficient to place plaintiff within a zone of

danger" for the purposes of stating a NIED claim.   See, K.A.C. v. Benson, 527

N.W.2d 553, 559 (Minn. 1995).   "In other words, a plaintiff presents a valid claim

when she experiences a reasonable anxiety, with physical symptoms, 'from being in

a situation where it was abundantly clear that plaintiff was in grave personal peril for

some specifically defined period of time."   Wall v. Fairview Hospital & Healthcare

Services, 584 N.W.2d 395 (Minn. 1998), quoting K.A.C. v. Benson, supra at 558.

Where, as here, an NIED claim is based upon "distress caused by fearing for

another's safety or witnessing serious injury to another," Engler v. Illinois Farmers

---

[5]Although the Minnesota Court of Appeals has held that there is an exception
to the "zone of danger" rule, such that "a plaintiff may recover damages for mental
anguish or suffering for a direct invasion of his rights, such as defamation, malicious
prosecution, or other willful, wanton or malicious conduct," Bohdan v. Alltool Mfg.
Co., 411 N.W.2d 902, 907 (Minn. App. 1987)[citing cases], see also, Strauss v.
Thorne, 490 N.W.2d 908, 912-13 (Minn. App. 1992), in Meyer v. Tenvoorde Motor
Co., 714 F. Supp. 991, 995 (D. Minn. 1989), the Court noted that the Minnesota
Supreme Court had declined to expand the NIED standard beyond the "zone of
danger" rule.  See, e.g., Engler v. Illinois Farmers Insurance Co., 706 N.W.2d 764,
767 (Minn. 2005)(including demonstration that the plaintiff was in the "zone of
danger" as part of a claim for NIED).

- 14 -

Ins. Co., supra at 770, the plaintiff must prove that "she:  (1) was in the zone of danger of physical impact; (2) had an objectively reasonable fear for her own safety; (3) had severe emotional distress with attendant physical manifestations; and (4) stands in a close relationship to the third-party victim."   Id. (noting that the mother-child relationship satisfies the requirement for a close relationship).

In her Complaint, the Plaintiff alleges that she was in the "immediate area" when the City police officers escorted her daughter to the car, see, Complaint, supra at ¶17.2, and at the Hearing, her counsel argued that, therefore, the Plaintiff had sufficiently alleged that she was in the zone of danger.  However, even if we accepted that argument, the Plaintiff's claim fails because she has not alleged any facts that would allow us to find that she reasonably feared for her own safety, nor has she alleged any physical manifestations of her emotional distress, which would allow for an NIED claim.  See, Quill v. Trans World Airlines, Inc., 361 N.W.2d 438 (Minn. App. 1985), rev. denied (Minn., April 18, 1985)(observing that a plaintiff cannot recover for NIED "absent some accompanying physical injury."), quoting Langeland v. Farmers State Bank, 319 N.W.2d 26, 31 (Minn. 1982); see also, Shqeirat v. U.S. Airways Group, Inc., 515 F.Supp.2d 984, 1003 (D. Minn. 2007).  Instead, the Plaintiff

alleges **only** that she suffered "extreme and severe emotional distress" from witnessing the police officers' alleged conduct.  See, <u>Complaint</u>, supra at ¶17.3.

Accordingly, the Plaintiff has failed to state an NIED claim against the City Defendants, and we recommend that their Motion to Dismiss also be granted in that respect.   In the interest of thoroughness, however, we turn to address several additional arguments, which have been raised by the City Defendants.

    3. <u>The Defendant Robert Utech</u>.   As noted, the Plaintiff has not named, as Defendants, the two (2) police officers who escorted her daughter to the car -- instead, she names the City, and Utech, as Defendants.   Accordingly, we conclude that the Plaintiff has failed to state any claim against Utech, given the absence of any allegation that Utech was **personally** involved in any alleged conduct.

Notably, the Plaintiff makes no mention of the City, or Utech, outside of the caption of her Complaint, except in her description of the parties, as follows:

> Defendant City of Baudette ("the City") is a municipal corporation, organized under the laws of the State of Minnesota.  It is responsible for the policies, procedures, and practices implemented through its own various agencies, agents, departments, and employees, and for injury occasioned thereby.  It was also the public employer of Defendants Police Chief Bob Utech and all the Baudette Police at all times relevant to this Complaint.

<u>Complaint</u>, supra at ¶1.9.

With respect to the unnamed City police officers, who are not Defendants, the Plaintiff

makes the following allegations:

> Plaintiff's oldest daughter went into severe physical and
> emotional distress and shock when two law enforcement
> officers physically tried to pry her away from her mother.
> Plaintiff's other two daughters were also very distressed
> and crying. * * *
>
> Two law enforcement officers from the Baudette Police
> Department physically restrained plaintiff's oldest daughter
> out of the courthouse and into her father's car.  She was
> treated like a criminal.  She was hurt and red marks were
> left on her arms.  She also said she couldn't breathe.  The
> force utilized was unnecessary and excessive.

Id. at ¶¶7.2-7.3.

Importantly, the Plaintiff's allegations do not assert any improper conduct on the part

of Utech, himself.

In order to sustain a claim under Section 1983, a plaintiff must show that the

named defendants were directly, and personally, involved in the illegal acts, or in the

policy decision which created the unlawful context for those acts.  See, e.g., Beck v.

LaFleur, 257 F.3d 764, 766 (8th Cir. 2001); McNair v. Norris, 2000 WL 490709 at *1

(8th Cir., April 27, 2000); Martin v. Sergeant, 780 F.2d 1334, 1337 (8th Cir. 1985).

Accordingly, the doctrine of respondeat superior is not available to a Section 1983

plaintiff.  See, e.g., Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); Lux

by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Rasmussen v. Larson, 863 F.2d 603, 605 (8th Cir. 1988).

Therefore, absent a showing of direct and personal involvement, by Utech, in the allegedly unlawful conduct, the only other basis, upon which a plaintiff may state a claim against him, is by demonstrating that he failed to properly train, supervise, or control, the actions of a subordinate, who invaded the plaintiff's rights. See, City of Canton v. Harris, 489 U.S. 378, 388 (1989); Ruge v. City of Bellevue, 892 F.2d 738, 739-40 (8th Cir. 1989); Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989).

Given the absence of any allegation that Utech was personally, and directly, involved in any constitutional wrong that the Plaintiff seeks to vindicate, and given the absence of any allegations which would demonstrate that Utech was involved in any policy decision, or that he failed to properly train or supervise the officers who escorted the Plaintiff's daughter to her father's car on a single occasion, the Plaintiff has failed to state any cognizable claim against Utech.

4.     The Defendant City of Baudette. The Plaintiff has similarly failed to allege any cognizable claim against the City. A municipality, such as the City, can be liable, under Section 1983, if a plaintiff can prove that the municipality adopted some policy, custom, or practice, which caused a violation of the plaintiff's Federal

constitutional rights.  See, <u>City of Canton v. Harris</u>, supra at 386-87; see also, <u>Lund v. Hennepin County</u>, 427 F.3d 1123, 1125 (8th Cir. 2005); <u>Angarita v. St. Louis County</u>, 981 F.2d 1537, 1546 (8th Cir. 1992)("A municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws."); <u>Williams v. Little Rock Municipal Water Works</u>, 21 F.3d 218, 223 (8th Cir. 1994)("[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees."), quoting <u>Monell v. Dept. of Social Services</u>, supra at 690.

A plaintiff is not required to specifically plead the existence of an unconstitutional policy or custom, see, <u>Crumpley-Patterson v. Trinity Lutheran Hospital</u>, 388 F.3d 588, 591 (8th Cir. 2004), citing <u>Doe v. School Dist. of Norfolk</u>, 340 F.3d 605, 614 (8th Cir. 2003), but a failure to include "any allegations, reference, or language by which one could begin to draw an inference that the conduct complained of * * * resulted from an unconstitutional policy or custom," will render a Complaint defective.  <u>Id.</u>  Moreover, "a single incident is not sufficient to establish * * * a

- 19 -

policy." <u>Ouzts v. Cummings</u>, 825 F.2d 1276, 1278 (8th Cir. 1987); see also, <u>Mann v. Yarnell</u>, 497 F.3d 822, 828 (8th Cir. 2007); <u>Davidson v. City of Minneapolis, Minnesota</u>, 490 F.3d 648, 659 (8th Cir. 2007), citing <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985).

Although the Plaintiff describes the City as "a municipal corporation," "responsible for the policies, procedures, and practices implemented through its own various agencies, agents, departments, and employees," <u>Complaint</u>, supra at ¶1.9, she has not alleged that the City adopted any policy or custom which led to a violation of her constitutional rights. Moreover, she has only alleged one (1) incident involving the City police officers, in which her daughter was escorted out of the courthouse, purportedly hyperventilated, and suffered red marks on her arms. The allegation, involving a single incident, is not sufficient to impose liability against the City, pursuant to Section 1983.

In sum, we find that the Plaintiff has failed to state any cognizable claim, arising out of the conduct of the City police officers, and we further find that she has failed to state any cognizable claim against Utech, or the City, who are the named Defendants. As a consequence, we recommend that the City Defendants' Motion to Dismiss be granted, as to all of the Plaintiff's claims against them.

C.   The State Defendants' Motion to Dismiss.

1.   Eleventh Amendment Immunity.  In an action under Title 42 U.S.C. §1983, a public servant may be sued in an official, or in an individual capacity, or both.  See, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). A suit against a public employee in that person's official capacity is merely a suit against the public employer.  Id., citing Kentucky v. Graham, 473 U.S. 159, 165 (1985).  The Eleventh Amendment protects the State, and the arms of the State, from liability for monetary damages in a Section 1983 action.  See, Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438  (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997)(stating that a State Agency or its officials may invoke Eleventh Amendment immunity, if the practical result of a suit would result in Judgment against the State itself).  Such immunity also extends to State officials who are named as individual defendants acting in their official capacity.  Id.  When the action is against the office and not the person, there is no difference from a suit against the State itself.  See, Hafer v. Melo, 502 U.S. 21, 25-26 (1991); Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989).

All of the State Defendants who are named in the Complaint -- Schnick, Seelye, and Toogood -- are employees of the GAL Program, and therefore, are entitled to

Eleventh Amendment immunity because they are officials employed by the State. See, <u>Hadley v. North Arkansas Community Technical College</u>, supra at 1438.  The Plaintiff does not allege any waiver of Eleventh Amendment immunity by any of the State Defendants.[6]  See, <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 800 (8th Cir. 2002)("To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so.").

As noted, the Plaintiff expressly disavows any intention to seek any relief other than monetary damages.  See, <u>Complaint</u>, supra at p. 2; <u>Plaintiff's Memorandum in Opposition</u>, supra at p. 3.  Accordingly, we note, as a threshold matter, that the Plaintiff's claims against the State Defendants are barred by the Eleventh Amendment,

---

[6]We reject the Plaintiff's contention, that the State Defendants are not entitled to Eleventh Amendment immunity because Congress abrogated Eleventh Amendment immunity when it enacted Title II of the Americans with Disabilities Act ("ADA"). See, <u>Plaintiff's Memorandum in Opposition</u>, supra at 16.  The Plaintiff has not asserted any claim under the ADA, and our Court of Appeals has expressly held that "Section 1983 does not override Eleventh Amendment immunity." <u>Hadley v. North Arkansas Community Technical College</u>, 76 F.3d 1437, 1438  (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997)[citation omitted].  Nor has the State Defendants' immunity, under the Eleventh Amendment, been abrogated as to the Plaintiff's conspiracy claims, pursuant to Section 1985.  See, <u>Beach v. Minnesota</u>, 2003 WL 21488679 at *3 (D. Minn., June 25, 2003)("Congress also has not abrogated state immunity by enacting 42 U.S.C. §1985.").  The Plaintiff's arguments to the contrary, therefore, are without merit.

- 22 -

to the extent that she seeks monetary damages for any actions taken by them in an official capacity. We turn, next, to consider whether the Plaintiff's claims are barred by the Rooker-Feldman Doctrine.

>    2.    The Rooker-Feldman Doctrine.

>    a.    Standard of Review. Rule 12(h)(3), Federal Rules of Civil

Procedure, requires that, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." "Subject matter jurisdiction * * * is a threshold requirement which must be assured in every federal case." Turner v. Armontrout, 922 F.2d 492, 293 (8th Cir. 1991).

As established by the Rooker-Feldman doctrine, Federal Courts do not possess subject matter jurisdiction over challenges to State Court decisions in judicial proceedings. See, Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283 (2005); see also, Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000); Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997). With minor exceptions, which do not apply here, the Federal review of a State Court determination may only be

obtained in the United States Supreme Court.  See, <u>District of Columbia Court of Appeals v. Feldman</u>, supra at 476, citing <u>Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers</u>, 398 U.S. 281, 296 (1970); <u>Charchenko v. City of Stillwater</u>, 47 F.3d 981, 983 (8th Cir. 1995); see also, <u>Title 28 U.S.C. §1257</u>.

The Supreme Court, in <u>Feldman</u>, formulated a general rule, which distinguishes general constitutional challenges to State laws and regulations -- over which the Federal Courts have jurisdiction -- from requests for review of specific State Court decisions, over which they have no jurisdiction.  As explained by the Court, when the Federal claims are "inextricably intertwined with" State Court "decisions, in judicial proceedings," they fall outside of the Federal Court's jurisdiction.   <u>District of Columbia Court of Appeals v. Feldman</u>, supra at 486-87.

Recognizing that lower Courts have construed the <u>Rooker-Feldman</u> doctrine "to extend far beyond the contours of the <u>Rooker</u> and <u>Feldman</u> cases," the Supreme Court recently clarified that the <u>Rooker-Feldman</u> doctrine is "confined to cases of the kind from which the doctrine acquired its name:   cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, supra at 284; see,

- 24 -

Lance v. Dennis, 546 U.S. 459, 460 (2006); Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005), cert. denied, 547 U.S. 1145 (2006).   Under this framework, the Rooker-Feldman doctrine will only apply in those instances where "the federal suit is commenced after the state court proceedings have ended."   Dornheim v. Sholes, supra at 923.

In reaching its holding, the Supreme Court, in Exxon-Mobil, observed that the "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law," and that "[p]reclusion, of course, is not a jurisdictional matter."   Id. at 293.   Accordingly, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party * * *, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."   Id., quoting, GASH Associates v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993); accord Noel v. Hall, 341 F.3d 1148, 1163-64 (9th Cir. 2003).   Since deciding Exxon-Mobil, the Supreme Court has further reiterated that "Rooker-Feldman is not simply preclusion by another name," and "[i]ncorporation of preclusion principles into Rooker-Feldman risks turning that limited doctrine into a uniform federal rule

- 25 -

governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." Lance v. Dennis, supra at 466 [emphasis in original].

In the wake of the Supreme Court's decisions in Exxon-Mobil, and Lance, several Federal Courts of Appeals have reexamined their Rooker-Feldman jurisprudence. Those Courts have invariably determined that the doctrine is limited to situations where the plaintiff seeks redress for injuries that were caused by a State Court Judgment. See, McCormick v. Braverman, 451 F.3d 382, 392 (6th Cir. 2006); Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3rd Cir. 2006); Bolden v. City of Topeka, 441 F.3d 1129, 1145 (10th Cir. 2006); Davani v. Virginia Department of Transportation, 434 F.3d 712, 718 (4th Cir. 2006); Hoblock v. Albany County Board of Elections, 422 F.3d 77, 87 (2nd Cir. 2005); Galibois v. Fisher, 2006 WL 827326 at *1-2 (1st Cir., March 31, 2006); see also, Noel v. Hall, supra at 1163; Jensen v. Foley, 295 F.3d 745, 747-48 (7th Cir. 2002).

Indeed, the Court of Appeals for the Second Circuit has determined that the requirement set forth in Exxon-Mobil, that "federal plaintiffs are not subject to the Rooker-Feldman bar unless they complain of an injury caused by a state judgment * * * is the core requirement from which others derive." Hoblock v. Albany County

<u>Board of Elections</u>, supra at 87 [emphasis in original].  In reaching that conclusion,

the Court explained, as follows:

> First, this requirement explains why a federal plaintiff cannot escape the Rooker-Feldman bar simply by relying on a legal theory not raised in state court.  Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.  This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

> Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for Rooker-Feldman purposes.  Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses.  If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination.  The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state-court judgment.

<u>Id.</u> at 87-88.

- 27 -

Given these precepts, the "inextricably intertwined" language, which is set forth in Feldman, "does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion:  if the state court loser seeks redress in the federal district court for the injury caused by the state court decision, his federal claim is, by definition, 'inextricably intertwined' with the state court decision, and is therefore outside of the jurisdiction of the federal district court."  Davani v. Virginia Department of Transportation, supra at 719.

As recently explained by our own Court of Appeals:

> A district court is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court * * * [citation to Exxon Mobil omitted.]  Rather, Rooker-Feldman is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it.

Skit Intern., Ltd. v. DAC Technologies of Arkansas, Inc., 487 F.3d 1154, 1157 (8th Cir. 2007).

Based on the overwhelming weight of the authorities we have cited, we conclude that, under Exxon-Mobil, the Rooker-Feldman doctrine only applies in those instances where the plaintiff seeks redress for an injury which, he or she alleges, was caused by the State Court decision itself.

Nevertheless, the <u>Rooker-Feldman</u> doctrine remains applicable to "[a] claim seeking redress for an injury caused by the state court decision itself -- even if the basis of the claim was not asserted to the state court," since such a claim "asks the federal district court to conduct an appellate review of the state court decision." <u>Fearing v. City of Lake St. Croix Beach</u>, 2006 WL 695548 at *4 (D. Minn., March 17, 2006). Moreover, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by the state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." <u>Id.</u> at *5, quoting <u>Hoblock v. Albany County Board of Elections</u>, supra at 88.

       b.    <u>Analysis</u>. The Plaintiff first argues that the <u>Rooker-Feldman</u> doctrine is inapplicable, based upon her contention that the custody proceeding is not yet final. In support of that argument, the Plaintiff advises that she has filed a Motion to modify her visitation schedule, which is set for a Hearing on July 29, 2008, in Wright County District Court. See, <u>Affidavit of Julie Vogel</u>, <u>Docket No. 30</u>, Exhibit 3.

Notwithstanding the Plaintiff's contention, the custody proceeding is final. As noted by the State Defendants, on November 16, 2004, the State Court temporarily

placed the children with their father.  See, <u>Affidavit of John S. Garry ("Garry Aff.")</u>, <u>Docket No. 13</u>, Exhibit B.  On March 10, 2005, the State Court entered its Judgment, which dissolved the Plaintiff's marriage, and granted sole physical custody to the Plaintiff's ex-husband.  <u>Id.</u>, Exhibit D.  On May 18, 2005, the State Court issued an Order for Removal, which permitted the Plaintiff's ex-husband to move to Georgia with the three minor children.  <u>Id.</u>, Exhibit E.  The Plaintiff appealed the custody determination, and the Order for Removal.  <u>Id.</u>, Exhibit G.  Thereafter, on February 7, 2006, the Minnesota Court of Appeals affirmed the State District Court's rulings in their entirety, <u>id.</u>, and on April 18, 2006, the Minnesota Supreme Court denied the Plaintiff's Petition for Review.  <u>Id.</u>, Exhibit H.

Accordingly, the Plaintiff has exhausted her State Court remedies, as to the initial custody determination, and the State Court proceeding became final when the Minnesota Supreme Court denied review.  See, <u>Dornheim v. Sholes</u>, supra at 924, citing <u>Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico</u>, 410 F.3d 17, 24 (1st Cir. 2005)("[W]hen the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state proceedings have 'ended.'").  The Plaintiff's argument to the contrary is without merit.

Turning to the merits, the Plaintiff argues that the <u>Rooker-Feldman</u> doctrine is inapplicable solely because she seeks damages, rather than a change in custody, as relief. She admits that her present action is related to the underlying dissolution proceedings, but she contends that we should look only to the requested relief, in order to determine the application of the <u>Rooker-Feldman</u> bar. Despite the Plaintiff's contentions, it is plain that her constitutional claims against the State Defendants are predicated upon Schnick's participation in the custody proceeding, including her report, testimony, and recommendations, to the State Court, which ultimately led to the State District Court's ruling -- i.e., its Order granting sole physical custody to the Plaintiff's ex-husband. See, <u>Complaint</u>, supra at ¶¶4.1-4.2, 7.6. The Plaintiff also complains about Schnick's participation in the transfer of custody, <u>id.</u> at ¶7.2, and about failure of Seelye, and Toogood, to address her complaints about Schnick. <u>Id.</u> at ¶6.2.

In effect, the Plaintiff asserts a Substantive Due Process violation, based upon her contention that she was injured by "a restriction of her liberty rights including, but not limited to, her right to possess or retain physical custody of her children." <u>Id.</u> at ¶8.4. In addition, construing the Plaintiff's Complaint generously, she alleges that the State Defendants violated her right to equal protection under the law, because they

were not sensitive to her Native American heritage, and did not consider it in making a custody recommendation, and/or because Schnick recommended that her ex-husband be granted custody, solely because he is white.[7]  Id. at ¶¶6.1-6.2.  With respect to her asserted Fourth Amendment claim, the Plaintiff alleges that the Defendants "negligently obtained, possessed and published private information about plaintiff[.]" Id. at ¶13.5.[8]  The Plaintiff also alleges that the Defendants engaged in a conspiracy to deprive her of those constitutional rights.  Id. at ¶12.

Under any formulation of the Plaintiff's constitutional claims, the only constitutional injury, which she alleges, is her loss of custody pursuant to the State Court's ruling.  "[F]ederal plaintiffs cannot by artful pleading obtain a hearing of

---

[7]According to the Plaintiff, her ex-husband is white, and a chemist.  See, Complaint, supra at p. 2.  The Plaintiff's education, and occupation, are not described in the Complaint.

[8]The Plaintiff did not elaborate on her Fourth Amendment claim in her legal memorandum.  However, at the Hearing, counsel for the Plaintiff explained his view, that the Plaintiff's Fourth Amendment rights were assertedly violated when Schnick told the Plaintiff's oldest daughter that the Plaintiff was mentally ill.  Counsel for the Plaintiff argued that Schnick's statement was outside the scope of her duties as GAL -- an argument we reject for reasons we detail in the text of this Report -- and further, was not supported by any medical evidence of mental illness.  Accordingly, counsel argued that Schnick impermissibly disclosed information from a medical record -- a medical record which, he contends, does not exist -- and that such a disclosure violates the Plaintiff's Fourth Amendment rights.

disguised state court appeals that would be otherwise subject to a Rooker-Feldman bar." Lemonds v. St. Louis County, supra at 494 [citation omitted]; see also, Ballinger v. Culotta, 322 F.3d 546, 549 (8th Cir. 2003)(applying Rooker-Feldman bar to Section 1983 action, in which the plaintiff alleged an injury from State Court decision which "allegedly 'unconstitutionally infringed [the plaintiff's] parental rights, [and] was infirm as a matter of law[,]'" given that the plaintiff "could prevail on his claims only if the district court determined that Judge Pratt wrongly decided the legal questions at issue."); Beach v. Minnesota, 2003 WL 21488679 at *4 (D. Minn., June 25, 2003), aff'd, 92 Fed.Appx. 386 (8th Cir. 2004)("Although the Plaintiff does not directly request an appeal of the state court's judgment [which vacated his custody and visitation rights], his claims are nonetheless barred by Rooker-Feldman."). Although "[o]n its face, [the Plaintiff's] federal complaint in this case may initially appear to articulate legal claims that are 'separable from and collateral to' those raised before the state court," "these arguments do no more than restate the claim for relief that was rejected on the merits by the state court," during the custody proceeding.[9] Id. at 494.

_____

[9]Notably, in her appeal from the custody determination, the Plaintiff argued that the State District Court had erred in finding that her children's Native American cultural background was not a significant custody factor. See, Garry Aff., supra, Exhibit G at p. 7. The Minnesota Court of Appeals rejected that argument, after

(continued...)

In sum, there is no circumstance under which the Plaintiff could succeed on the merits of her Federal claims, against the State Defendants, without a reversal of the Judgment entered in the State Court's custody proceeding, given that her only alleged injury is the loss of custody.   The State Defendants correctly note that "the constitutional injury alleged by the Plaintiff could exist only if the state court erred in its custody decision."   See, <u>State Defendants' Memorandum in Support</u>, supra at 7. The Plaintiff cannot challenge the outcome of the State Court custody proceeding by means of a Federal Court civil rights action. Accordingly, the <u>Rooker-Feldman</u> doctrine is applicable to the Plaintiff's claims and prohibits this Federal Court from re-examining rulings made by a Minnesota State Courts, under the circumstances presented here.

As a result, we recommend that the State Defendants' Motion to Dismiss be granted, as to all of the Plaintiff's constitutional claims.

3.      <u>Quasi-Judicial Immunity</u>.  In the interest of thoroughness, we turn to consider the contention of the State Defendants, that all of the Plaintiff's claims against them are also barred by the doctrine of quasi-judicial immunity, given that her

---

[9](...continued)
finding that no evidence on the children's cultural background was introduced at Trial. <u>Id.</u>

claims arise out of Schnick's participation in both the custody proceeding, and in the enforcement of the custody Order.[10] See, State Defendants' Memorandum in Support, supra at 13.

"Although we start with the presumption that qualified immunity is sufficient to protect governmental officials other than judges, we have not hesitated to extend absolute judicial immunity to other officials for acts taken pursuant to a facially valid court order." Penn v. United States, 335 F.3d 786, 789 (8th Cir. 2003), citing Robinson v. Freeze, 15 F.3d 107, 108 (8th Cir. 1994), and Martin v. Hendren, 127 F.3d 720, 721 (8th Cir. 1997). As our Court of Appeals explained, in Martin v. Hendren, supra at 721:

> "Absolute quasi-judicial immunity derives from absolute judicial immunity." Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994). Judges are absolutely immune from suit for money damages when they act in their judicial capacity, unless their actions are "taken in the complete absence of all jurisdiction." Duty [v. City of Springdale, Ark.], 42 F.3d [460], 462 [(8th Cir. 1994)]. A judge's absolute immunity extends to public officials for "'acts they are specifically required to do under court order or at a judge's direction.'" Robinson v. Freeze, 15 F.3d 107, 109 (8th Cir.

---

[10]This is true not only for the Plaintiff's asserted constitutional claims against the State Defendants, but also for her State law claims, for racial discrimination, and tortious conduct.

1994)(quoting Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988)).

Here, the Plaintiff alleges that Schnick "went beyond [her] qualifications and job duties and acted maliciously and intentionally beyond the scope of [her] assignments in [her] reports to the court * * * ," by reporting that Wells was mentally ill "without giving any supporting evidence." Complaint, supra at ¶4.1.    The Plaintiff also alleges that Schnick "witnessed the older daughter hyperventilating, but still insisted on forcing plaintiff's daughters to leave the courthouse to go live with their father." Id. at ¶7.2.

However, notwithstanding the Plaintiff's bare allegation that Schnick acted outside the scope of her duties, the Plaintiff has not alleged any conduct by Schnick, other than her actions in submitting a report and recommendation to the State Court, and in enforcing a State Court Custody Order.  As noted by the State Defendants, GALs have absolute quasi-judicial immunity for their investigations, reports, and recommendations, even in the face of the Plaintiff's claims of malice and bad faith. See, Dornheim v. Sholes, supra at 922, 925; McCuen v. Polk County, 893 F.2d 172, 174 (8th Cir. 1990)(concluding that "[absolute] immunity [to which guardians ad litem, inter alia, are entitled] extends beyond oral testimony to providing their reports and

- 36 -

recommendations to the family court.")[alterations in original], citing Myers v. Morris, 810 F.2d 1437, 1466 (8th Cir. 1987), cert. denied, 484 U.S. 828 (1987); Kent v. Todd County, 2001 WL 228433 at *8 (D. Minn., February 21, 2001)(Guardians ad litem and custody evaluators "are afforded absolute immunity, even when claims of malice and bad faith in investigating and preparing their reports are asserted against them.").  In addition, Schnick is entitled to immunity for her actions to enforce the State Court's Custody Order.  See, Patterson v. Von Riesen, 999 F.2d 1235, 1240 (8th Cir. 1993)("[O]fficials acting pursuant to a facially valid court order have a quasi-judicial absolute immunity from damages for actions taken to execute that order.").

It is true that quasi-judicial immunity would not protect Schnick for any acts performed beyond the scope of her duties.  See, Kent v. Todd County, supra at *8, citing Tindell v. Togosheske, 428 N.W.2d 386, 387 (Minn. 1988), for the proposition that "[t]he guardian is absolutely immune from liability for acts within the scope of that guardian's exercise of statutory responsibilities."  However, Schnick is entitled to immunity, even if she improperly performed her duties as GAL, and here, the Plaintiff has failed to make any factual allegation that Schnick performed any **function** beyond the scope of her position.  See, State Defendants' Reply Memorandum, Docket No. 36, at 7, citing In re Scott Master Docket, 618 F.Supp.

1534, 1573 (D. Minn. 1985)("[E]ven if the guardian defendants committed these alleged acts, they would have done so while performing their duties as guardians," and "[o]bviously, the duties of these [officials] did not include lying, but the courts granted them absolute immunity because their purported transgressions were part of their functions as court appointed officials."), rev'd in part on other grounds, Myers v. Morris, supra, citing in turn, Bartlett v. Weimer, 268 F.2d 860, 862 (7th Cir. 1959). The Plaintiff's allegation, that Schnick made an untrue statement to the Plaintiff's daughter, concerning the Plaintiff's mental health, does not show any conduct beyond Schnick's duties as the GAL.

With respect to Seelye and Toogood, the Plaintiff contends that her unspecified complaints "were largely disregarded," id. at ¶6.2, and that Seelye "told plaintiff that Guardians ad Litem do not need to show awareness or sensitivity to Native Americans."   Although the Plaintiff was unhappy with Schnick's conduct, and complained to Schnick's supervisors, she cannot impose vicarious liability on Seelye, and Toogood, for the allegedly improper acts of Schnick.  See, State Defendants' Memorandum in Support, supra at 15.

As we have noted, in order to sustain a claim under Section 1983, a plaintiff must show that the named defendants were directly, and personally, involved in the

illegal acts, or in the policy decision which created the unlawful context for those acts. See, e.g., <u>Beck v. LaFleur</u>, supra at 766; <u>McNair v. Norris</u>, supra at *1; <u>Martin v. Sergeant</u>, supra at 1337.   This is true because the doctrine of <u>respondeat</u> <u>superior</u> is not available to a Section 1983 plaintiff.  See, e.g., <u>Monell v. Dep't of Social Servs.</u>, supra at 691; <u>Lux by Lux v. Hansen</u>, supra at 1067; <u>Rasmussen v. Larson</u>, supra at 605.  Therefore, to the extent that the Plaintiff attempts to hold Seelye, and Toogood, liable for Schnick's conduct, she has failed to state a legally cognizable claim against them.  The Plaintiff has not alleged that Seelye or Toogood were responsible for any policymaking, nor has she alleged that they were personally involved in the custody determination.

Accordingly, even if the <u>Rooker-Feldman</u> bar did not preclude the Plaintiff's claims, the State Defendants are entitled to quasi-judicial immunity, for their actions in connection with the custody proceedings.  Therefore, we recommend that the State Defendants' Motion to Dismiss be granted, as to all of the Plaintiff's claims.

4.     <u>The Plaintiffs' State Law Claims</u>.  Lastly, with respect to the Plaintiff's State law claims, the State Defendants contend that the statute of limitations has run for the Plaintiff's MHRA claim, as well as for her claims of defamation,

defamation per se, and IIED.[11]  See, <u>State Defendants' Memorandum in Support</u>, supra at 20.  We agree.

The factual allegations, in the Plaintiff's Complaint, begin with August 5, 2003, when the Plaintiff's ex-husband commenced dissolution proceedings.  See, <u>Complaint</u>, supra at ¶3.1.  Schnick served as the GAL from April 26, 2004, until September 19, 2005, which is also the timeframe during which Seelye, and Toogood, would have supervised her work as GAL, as pertinent to the Plaintiff's dissolution proceedings. See, <u>Affidavit of John S. Garry ("Garry Aff.")</u>, <u>Docket No. 13</u>, Exhibits A and F.

However, the Plaintiff did not file her Complaint, in this Court, until January 14, 2008.  Her claim under the Minnesota Human Rights Act is therefore barred pursuant to the relevant one (1) year statute of limitations.  See, <u>Minnesota Statutes Section 363A.28, Subdivision 3</u>.  Her remaining intentional tort claims, for defamation, defamation per se, and IIED, are barred by the relevant two (2) year statute of limitations.  See, <u>Minnesota Statutes Section 541.07(1)</u> (imposing two (2) year statute of limitations "for libel, slander, assault, battery, false imprisonment, or

---

[11]As previously addressed, the Plaintiff also asserts a claim for NIED.  See, <u>Complaint</u>, supra at ¶¶17.1-17.4. However, a review of the Complaint makes apparent that the claim is directed **only** at the conduct of the City police officers, who escorted her daughter to her ex-husband's car.  <u>Id.</u> at ¶17.2.  Accordingly, this claim is not asserted against the State Defendants.

other tort resulting in personal injury"); see also, <u>Johnson v. Overnite Transp. Co.</u>, 19

F.3d 392, 392-93 (8th Cir. 1994)(defamation); <u>Hayes v. Blue Cross Blue Shield of</u>

<u>Minnesota, Inc.</u>, 21 F.Supp.2d 960, 978 (D. Minn. 1998)(IIED).

As a consequence, we recommend that the State Defendants' Motion to Dismiss

be granted in this respect, and that the Plaintiff's State law claims be dismissed, as

against them.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Motion of the City Defendants to Dismiss [Docket No. 5] be

GRANTED.

2.      That the Motion of the State Defendants to Dismiss [Docket No. 10] be

GRANTED.


Dated:  July 15, 2008                          <u>s/Raymond L. Erickson</u>
                                               Raymond L. Erickson
                                               CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR 1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 1, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 1, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.